IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| TIFFANI STEPHENS ) <br> 3301 Park Road ) <br> Charlotte, North Carolina 28209 ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> RACK ROOM SHOES, INC. ) <br> 8310 Technology Drive ) <br> Charlotte, North Carolina, 28262 ) <br> ) <br> **Serve Also:** ) <br> RACK ROOM SHOES, INC. ) <br> c/o Corporate Creations Network Inc., ) <br> registered agent ) <br> 15720 Brixham Hill Avenue, #300 ) <br> Charlotte, North Carolina, 28277 ) <br> ) <br> Defendant ) | **COMPLAINT FOR DAMAGES** <br><br> **JURY DEMAND ENDORSED HEREIN** |

Plaintiff, Tiffani Stephens, by and through undersigned counsel, as her Complaint against Defendant Rack Room Shoes, Inc. ("Rack Room Shoes") states and avers the following:

## **PARTIES**

1. Stephens is a resident of the city of Charlotte, county of Mecklenburg, state of North Carolina.

2. Rack Room Shoes is a corporation which is incorporated in North Carolina. Rack Room Shoe's principal place of business is located in Mecklenburg county.

3. Rack Room Shoes was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. § 2000e *et seq.*

4. Rack Room Shoes was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C § 12101 *et seq.*

## **JURISDICTION & VENUE**

5. Rack Room Shoes hires citizens of the state of North Carolina, contracts with companies in North Carolina, is incorporated in North Carolina, has its principal place of business in North Carolina, and owns or rents property in North Carolina. As such, the exercise of personal jurisdiction over Rack Room Shoes comports with due process.

6. The wrongs herein alleged occurred at Rack Room Shoes's Mecklenburg County office and were perpetrated by Rack Room Shoes and its employees working at Rack Room Shoes's Mecklenburg County office. As such, this Court has personal jurisdiction over Rack Room Shoes.

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1341 in that Stephens is alleging a Federal Law Claim under the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Plaintiff's future claims are also going to be covered under the Americans with Disabilities Act, 42 U.S.C § 12101 *et seq.* ("ADA").

8. Venue is proper in this District because the wrongs herein alleged occurred in this District.

## ADMINISTRATIVE PROCESS

9. Within 180 days of the conduct alleged below, Stephens filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 430-2025-02162, alleging race discrimination against Rack Room Shoes ("First Charge of Discrimination").

10. Within 180 days of the conduct alleged below, Stephens amended her First Charge of Discrimination ("Amended First Charge of Discrimination"), adding additional facts in support of her claim of race discrimination and adding a claim of retaliation under Title VII.

11. Within 180 days of the conduct alleged below, Stephens filed a Charge of Discrimination with the EEOC, Charge No. 430-2025-04904, alleging disability discrimination and retaliation under the ADA against Rack Room Shoes ("Second Charge of Discrimination").

12. On or about August 6, 2025, the EEOC issued and mailed a Notice of Right to Sue letter to Stephens regarding her Amended First Charge of Discrimination.

13. Stephens requested a right to sue for her Second Charge of Discrimination before the government shutdown that began on October 1, 2025, but the request was not processed prior to the shutdown. Therefore, Stephens has not yet exhausted her administrative remedies as to her claims under the ADA contained in the Second Charge of Discrimination.

14. Stephens will amend this Complaint upon receiving the right to sue for her Second Charge of Discrimination

15. Stephens received her Right to Sue letter from the EEOC for her Amended First Charge of Discrimination in accordance with 42 U.S.C. § 2000e-5. A copy has been attached hereto as Plaintiff's Exhibit A.

16. Stephens has requested her Right to Sue letter from the EEOC for her Second Charge of Discrimination.

17. Once Stephens has received her Right to Sue Letter for her Second Charge of Discrimination in accordance with 42 U.S.C. § 12117(a), Stephens will attach a copy in an amendment to her complaint as Plaintiff's Exhibit B.

18. Stephens filed this Complaint within 90 days of the issuance of the Notice of Right to Sue on her First Charge of Discrimination.

19. Stephens has properly exhausted her administrative remedies as to her First Charge of Discrimination.

## TITLE VII COVERAGE

20. At all times referenced herein, Rack Room Shoes was an "employer" within the meaning of 42 U.S.C. § 2000e(b), in that it was engaged in an industry affecting commerce and had fifteen

or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

21. At all times referenced herein, Stephens was an "employee" within the meaning of 42 U.S.C. § 2000e(f), in that she was an individual employed by an employer.

## FACTS

22. Stephens was placed with Rack Room Shoes through a third-party staffing agency on or about November 7, 2022.

23. On or about March 27, 2023, Stephens was hired as an employee by Rack Room Shoes.

24. Rack Room Shoes hired Stephens as an employee because of her exceptional work.

25. Rack Room Shoes hired Stephens as a Human Resources Assistant I.

26. Stephens is African American.

27. Stephens was the only African American Human Resources Assistant.

28. In her role as Human Resources Assistant I, Stephens worked closely with her coworker Stephanie McDaniel.

29. McDaniel is Caucasian.

30. McDaniel's title was also Human Resources Assistant I.

31. McDaniel had similar or less experience in human resources than Stephens.

32. McDaniel had similar or less relevant education than Stephens.

33. As of March 10, 2024, Rack Room Shoes paid Stephens $19.55 per hour.

34. As of March 10, 2024, Rack Room Shoes paid McDaniel $24.75 per hour.

35. Upon information and belief, the decision regarding how much to pay McDaniel and Stephens was made by a Caucasian employee.

36. Stephens was paid less than McDaniel because of her race.

37. Stephens also received a lower retention bonus than her Caucasian coworkers who were in the same role.

38. Stephens received a lower retention bonus than McDaniel.

39. Stephens received a lower retention bonus than her Caucasian coworkers because of her race.

40. Stephens objected to these discriminatory pay discrepancies.

41. Stephens requested a raise to remedy these discriminatory pay discrepancies.

42. Management did not correct the discriminatory pay discrepancies.

43. McDaniel did not have supervisory authority over Stephens.

44. Despite McDaniel having no supervisory authority over Stephens, McDaniel treated Stephens like a subordinate.

45. McDaniel accessed and viewed Stephens's private work folders.

46. McDaniel monitored Stephens's work in Rack Room Shoes's Zendesk system.

47. McDaniel did not treat Caucasian employees like subordinates.

48. McDaniel did not access and view Caucasian employees' private work folders.

49. McDaniel did not monitor Caucasian employees' work in Rack Room Shoes's Zendesk system.

50. McDaniel treated Stephens like a subordinate because of Stephens's race.

51. McDaniel accessed and viewed Stephens's private work folders because of Stephens's race.

52. McDaniel monitored Stephens's work in Rack Room Shoes's Zendesk system because of Stephens's race.

53. Stephens objected to McDaniel's discriminatory treatment of her.

54. Management did not correct the discriminatory treatment.

55. In or around January, 2025, an HR management position became available at Rack Room Shoes.

56. When the HR management position became available, Rack Room Shoes did not post the position.

57. Instead of posting the HR management position, Rack Room Shoes made the decision about who to promote without interviews.

58. Randolph Brodwin participated in the decision to promote McDaniel over Stephens.

59. Brodwin is Caucasian.

60. Brodwin had the authority to promote Stephens.

61. Tracey Downs also participated in the decision to promote McDaniel over Stephens.

62. Downs is Caucasian.

63. Downs had the authority to promote Stephens.

64. At the time the position of HR manager became available, Stephens had already been performing many of the functions of the HR manager.

65. At the time the position of HR manager became available, Stephens had a bachelor's degree.

66. At the time Stephens the HR Manager position became available, Stephens was qualified for the HR manager position.

67. Stephens was qualified by her skills and experience for the HR manager position.

68. Stephens was qualified by her meeting Rack Room Shoes's legitimate business expectations for her then-current position.

69. Rack Room Shoes promoted McDaniel over Stephens for the HR Management position on or about January 14, 2025.

70. Brodwin and Downs denied Stephens the promotion because of her race.

71. Stephens objected to and complained about the discriminatory decision to promote McDaniel over Stephens.

72. Stephens made her complaint orally to Downs.

73. Stephens initiated her complaint via Microsoft Teams to Brodwin.

74. Stephens later met with Brodwin and made her complaint orally to Brodwin.

75. Downs stated that the reason that Stephens was not promoted was for financial reasons.

76. Brodwin stated that the reason that Stephens was not promoted was for financial reasons.

77. At the time of the promotion, other employees were getting bonuses.

78. For example, Downs received a $10,000 bonus for being the interim manager for four to five months.

79. Rack Room Shoes had the finances to promote Stephens.

80. Downs and Brodwin's reason for failing to promote Stephens is pretext.

81. After McDaniel was promoted, McDaniel began a campaign to have Stephens terminated.

82. McDaniel sent text messages to other employees about trying to have Stephens terminated.

83. McDaniel targeted Stephens for termination because of her race.

84. Stephens suffers from osteoarthritis.

85. Stephens's osteoarthritis substantially limits her ability to walk.

86. Stephens's osteoarthritis substantially limits her ability to stand.

87. Stephens's osteoarthritis is a disability.

88. Stephens suffers from degenerative joint disease.

89. Stephens's degenerative joint disease substantially limits her ability to walk.

90. Stephens's degenerative joint disease substantially limits her ability to stand.

91. Stephens's degenerative joint disease is a disability.

92. Stephens informed Rack Room Shoes after being hired that she suffers from osteoarthritis and degenerative joint disease (together, "Disabilities").

93. Rack Room Shoes was aware of Stephens's actual disability.

94. Rack Room Shoes perceived Stephens as disabled.

95. Rack Room Shoes was aware of Stephens's record of disability.

96. Stephens informed her supervisor Tracey Downs about her Disabilities.

97. Downs was aware of Stephens's actual disability.

98. Downs perceived Stephens as disabled.

99. Downs was aware of Stephens's record of disability.

100. Stephens informed her supervisor Justine Frank about her Disabilities.

101. Frank was aware of Stephens's actual disability.

102. Frank perceived Stephens as disabled.

103. Frank was aware of Stephens's record of disability.

104. Stephens disclosed her disabilities to human resource manager Melissa Fuller.

105. Fuller was aware of Stephens's actual disability.

106. Fuller perceived Stephens as disabled.

107. Fuller was aware of Stephens's record of disability.

108. On or about December 16, 2024, Stephens submitted a request for reasonable accommodations for her Disabilities ("Request for Reasonable Accommodations").

109. Stephens's Request for Reasonable Accommodations included limiting the amount of time that Stephens would be on her feet.

110. Stephens's Request for Reasonable Accommodations included an accommodation allowing her to wear more comfortable footwear.

111. Stephens's Request for Reasonable Accommodations included allowing Stephens short breaks as needed. (together, Reasonable Accommodations").

112. Stephens's Request for Reasonable Accommodations was communicated to Downs.

113. Stephens's Request for Reasonable Accommodations was communicated to Frank.

114. Stephens's Request for Reasonable Accommodations was communicated to Fuller.

115. Stephens's Request for Reasonable Accommodations was denied.

116. Upon information and belief, Caucasian employees were not denied reasonable accommodations.

117. Stephens's Request for Reasonable Accommodations was denied because of Stephens's race.

118. Stephens objected to and complained about the denial of her Request for Reasonable Accommodations.

119. Rack Room Shoes did not engage in an interactive accommodation process regarding Stephens's First Request for Accommodations.

120. Stephens objected to and complained about the failure to engage in an interactive accommodation process.

121. Stephens's Disabilities and Request for Reasonable Accommodations were demeaned by her supervisors.

122. Frank stated that she was not paid enough to deal with Stephens Reasonable Accommodations.

123. Downs made multiple jokes about Stephens's Disabilities and need for Reasonable Accommodations.

124. Because Stephens's Request for Reasonable Accommodations was denied, Stephens would sometimes take off her work shoes while working at her desk to help manage the pain caused by her Disabilities.

125. When Downs saw that Stephens had taken her shoes off at her desk, Downs made fun of Stephens's need to take her shoes off.

126. Stephens explained to Downs that she was doing so because of her Disabilities.

127. Downs continued to tease Stephens because of her taking her shoes off.

128. Stephens objected to and complained about the discriminatory treatment.

129. On or about March 20, 2025, Stephens was terminated.

130. Stephens was terminated for purportedly terminated for failing to clock in and out of lunch.

131. Stephens did not violate Rack Room Shoes's policy for clocking in and out.

132. Rack Room Shoes's purported reason for terminating Stephens's employment is pretext.

133. Stephens was terminated because of her race.

134. Stephens was terminated because of her opposition to racial discrimination.

135. Stephens was terminated because of her Disabilities.

136. Stephens was terminated because of her perceived Disabilities.

137. Stephens was terminated because of her opposition to disability discrimination.

## COUNT I: RACE DISCRIMINATION IN VIOLATION OF TITLE VII

138. Stephens restates each and every paragraph of this complaint as if it were fully restated herein.

139. Pursuant to 42 U.S.C. § 2000e-2(a)(1), it is an unlawful employment practice for an employer to discriminate against an employee "because of such individual's race."

140. Stephens is African American.

141. For the entirety of Stephens's employment with Rack Room Shoes, Stephens was qualified for her position.

142. Throughout Stephens's employment with Rack Room Shoes, Stephens's non-African American supervisors discriminated against her because of her race.

143. Rack Room Shoes terminated Stephens because of her Race.

144. Rack Room Shoes violated Title VII by discriminating against and terminating Stephens because of her Race.

145. As a result of Rack Room Shoes's discrimination, Stephens suffered damages including but not limited to lost wages.

146. In its discriminatory actions as alleged above, Rack Room Shoes acted with malice or reckless indifference to Stephens's rights, thereby entitling Stephens to an award of punitive damages.

147. To remedy the violations of Stephens's rights, secured by 42 U.S.C. § 2000e *et seq.*, Stephens requests that the Court award her the relief prayed for below.

## COUNT II: RETALIATION IN VIOLATION OF TITLE VII

148. Stephens restates each and every paragraph of this complaint as if it were fully restated herein.

149. Pursuant to 42 U.S.C. § 2000e-3, "It shall be an unlawful employment practice for an employer to discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice by this subchapter."

150. Stephens opposed an unlawful employment practice when she objected to and complained about racial discrimination at Rack Room Shoes.

151. In response to Stephens's opposition to unlawful employment practices, Rack Room Shoes retaliated against Stephens by terminating Stephens.

152. As a result of Rack Room Shoes's retaliation, Stephens suffered damages including but not limited to lost wages.

153. In its retaliatory actions as alleged above, Rack Room Shoes acted with malice or reckless indifference to Stephens's rights, thereby entitling Stephens to an award of punitive damages.

154. To remedy the violations of Stephens's rights, secured by 42 U.S.C. § 2000e *et seq.*, Stephens requests that the Court award her the relief prayed for below.

## COUNT III: <u>RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981</u>

155. Stephens restates each and every paragraph of this complaint as if it were fully restated herein.

156. Rack Room Shoes violated Stephens's rights under the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

157. Rack Room Shoes, by denying Stephens equal treatment to Caucasian employees and by terminating Stephens, intentionally deprived Stephens of the same rights as are enjoyed by Caucasian citizens to the creation, performance, enjoyment, and all benefits and privileges, of her employment relationship with Rack Room Shoes, in violation of Section 1981.

158. As a result of Rack Room Shoes denying Stephens equal treatment to Caucasian employees and by terminating Stephens in violation of Section 1981, Stephens has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Stephens to injunctive, equitable, and compensatory monetary relief.

159. As a result of Rack Room Shoes denying Stephens equal treatment to Caucasian employees and by terminating Stephens in violation of Section 1981, Stephens has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

160. Rack Room Shoe's denying Stephens equal treatment to Caucasian employees and terminating Stephens in violation of Section 1981 was done with malice or reckless indifference to Stephens's rights, thereby entitling Stephens to an award of punitive damages.

161. To remedy the violations of Stephens's Section 1981 rights, Stephens requests that the Court award her the relief prayed for below.

## COUNT IV: <u>RETALIATION IN VIOLATION OF 42 U.S.C. § 1981</u>

162. Stephens restates each and every paragraph of this complaint as if it were fully restated herein.

163. Rack Room Shoes violated Section 1981 by terminating Stephens because of her multiple complaints and objections bout what she reasonable believed to be racially motivated disparate treatment and discrimination against her because of her race.

164. As a direct and proximate result of Rack Room Shoes's unlawful retaliatory conduct in violation of Section 1981, Stephens has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which Stephens is entitled to an award of monetary damages and other relief.

165. As a direct and proximate result of Rack Room Shoes's unlawful retaliatory conduct in violation of Section 1981, Stephens has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which Stephens is entitled to an award of monetary damages and other relief.

166. Rack Room Shoes's unlawful retaliatory conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injur Stephens, and was done with conscious disregard of Stephens's civil rights, entitling Stephens to an award of punitive damages.

167. To remedy the violations of Stephens's Section 1981 rights, Stephens request that the Court award her the relief prayed for below.

## **DEMAND FOR RELIEF**

WHEREFORE, Tiffani Stephens demands the following:

(a) An award against Defendant of compensatory and monetary damages to compensate Stephens for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(b) An award of punitive damages against Stephens in an amount in excess of $25,000.

(c) An award of reasonable attorneys' fees and non-taxable costs for Stephens's claims as allowable under law;

(d) An award of the taxable costs of this action; and

(e) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Evan Gungor*
Evan Gungor (60902)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
5540 Centerview Drive
Suite 200B
Raleigh, NC 27606
Phone: (216) 291-4744
Fax: (216) 291-5744
evan.gungor@spitzlawfirm.com

*Attorney for Plaintiff*
*Tiffani Stephens*

## JURY DEMAND

Plaintiff Tiffani Stephens demands a trial by jury by the maximum number of jurors permitted.

*/s/ Evan Gungor*

Evan Gungor